**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Julian Villar,<br><br>Defendant. | Case No. 16 CR 340<br><br>Hon. LaShonda A. Hunt |

## MEMORANDUM OPINION AND ORDER

Defendant Julian Villar pled guilty to heroin distribution and is currently serving a term of imprisonment for the offense. Villar has now filed a *pro se* motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Contending that his elderly parents are incapacitated, and he is the only available caregiver, Villar argues that he has shown extraordinary and compelling reasons to reduce his sentence to time served. For the reasons discussed below, the motion [49] is denied.[1]

## BACKGROUND

Villar has an extensive criminal history involving escalating drug offenses and repeated fugitive exploits. In 1994, Texas police discovered over 500 pounds of marijuana in Villar's car during a traffic stop. Villar eventually pled guilty to a lesser charge of possession of up to 200 pounds of marijuana, was sentenced to 10 years imprisonment, paroled after 3 years, and was later declared a fugitive. (Presentence Investigation Report (PSR) ¶ 31, Dkt. 36 (sealed)). In 2000, while still a fugitive, Villar was charged with laundering drug money, for which he received a sentence of 37 months' imprisonment and 3 years of supervised release. (*Id.* ¶ 32).

[1] The motion and memorandum of law filed at [52] and [53] are terminated as duplicate filings because they appear to be the same as the motion and memorandum filed at [49] and [50].

In 2009, Villar was charged with conspiracy to possess cocaine with intent to distribute. After Villar pled guilty, he was sentenced in 2013 to 63 months' imprisonment, followed by 5 years of supervised release. Villar was allowed to self-surrender but failed to do so and remained a fugitive at-large until his arrest in 2017 for distribution of heroin in the instant case. (*Id.* ¶¶ 1-9, 33). Villar pled guilty and was sentenced to 77 months' imprisonment on the heroin charge and an additional 12 months for committing this offense while on release, followed by 5 years of supervised release. (Judgment, Dkt. 47). This term of imprisonment was to run consecutively with the 63-month sentence from the 2009 cocaine offense. (*Id.*)

But in 2019, Villar escaped custody while on transfer furlough. He was captured a month later, charged with escape, and sentenced to 18 months' imprisonment to be served consecutively to any undischarged terms of incarceration. *United States v. Villar*, No. 19 CR 23, Dkt. 39 (W.D. Penn. May 12, 2020). Villar is currently imprisoned at the Federal Correctional Institution in Milan, Michigan. While he claims to have only 4 years left to serve, the Federal Bureau of Prisons website lists his anticipated release date as June 2029. *See* https://www.bop.gov/inmateloc/ (choose "Find By Name" tab; type "Julian" under "First" and "Villar" under last; click "Search"). Villar is currently 60 years old.

According to Villar, his parents are now elderly and not in good health, and they reside together in Chicago without a live-in caretaker. Villar claims that his father is 84 years old, bedridden most of the day, unable to walk without assistance, and suffering from prostate cancer, lower back pain with sciatica, and significant mobility and cognitive impairment. Villar states that his father requires around-the-clock assistance so that he can complete basic tasks such as eating, dressing, bathing, taking medication, and attending medical appointments. Villar says that his mother is 80 years old and reportedly has trouble standing for more than 30 minutes at a time, is

unable to drive due to her medication, and suffers from osteoporosis, diabetes, hypertension, a lung nodule, dyslipidemia, multinodular goiter, complex cyst of kidney, fatty liver, adrenal adenoma, and obesity. As a result, Villar claims that she has trouble completing basic tasks for herself as well as her husband. Villar also says that his mother suffers from cognitive impairments. Villar submitted letters from his parents' primary care physicians as evidence of their condition.

One of Villar's four siblings, Velia Zavala, currently cares for their parents. However, Villar states that his sister is unable to provide adequate care because she lives remotely. Furthermore, he contends, all of his siblings have large families with young children which makes it difficult for them to care for their parents. Villar says that all of his siblings live remotely from their parents but are within 45 minutes to an hour from them. Villar explains that he has become close to his parents over his years in prison, is willing and able to care for them, and is therefore the only available caregiver for them.

Villar reports that during his imprisonment he has taken college courses, worked in the prison, and reconnected with family. Villar also drafted a "Release Plan" that repeats many of the details of his family situation and states that he would stay with his parents and care for them, be supported financially by his family, and, when viable, start a construction company to provide for himself. Villar acknowledges that his crimes were serious but says he is remorseful and promises to be dedicated to his parents and live a productive life if released.

Villar claims that he submitted a request to the prison warden before filing the instant motion, asking that the Bureau of Prisons move for modification of his sentence based on the same grounds articulated here. According to Villar, the warden denied his request, although no documentation of the purported denial was provided.

## LEGAL STANDARD

A request for modification of an imposed term of imprisonment is governed by 18 U.S.C. § 3582(c), which provides, in pertinent part, that:

> **(c) Modification of an imposed term of imprisonment.**—The court may not modify a term of imprisonment once it has been imposed except that—
>
> **(1)** in any case—
>
> **(A)** the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> **(i)** extraordinary and compelling reasons warrant such a reduction[]
>
> ***
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i). Thus, if a defendant has exhausted administrative remedies, "[a] district court may grant a motion for a reduced sentence if (1) 'extraordinary and compelling reasons warrant such a reduction,' (2) the reduction is 'consistent with applicable policy statements issued by the Sentencing Commission,' and (3) the reduction is appropriate in light of the section 3553(a) sentencing factors." *United States v. Williams*, 65 F.4th 343, 346 (7th Cir. 2023) (quoting 18 U.S.C. § 3582(c)(1)(A)); *cf. United States v. Thacker*, 4 F.4th 569, 576 (7th Cir. 2021) (describing two-step analysis, with the first two steps of *Williams* combined); *see also United*

*States v. Black*, No. 05 CR 70-4, 2024 WL 449940, at *3 (N.D. Ill. Feb. 6, 2024) (Jenkins, J.) (citing *Williams* & *Thacker*).

District courts have broad discretion in applying the sentencing factors and determining whether "extraordinary and compelling reasons" warrant a reduction. *Williams*, 65 F.4th at 349; *United States v. Rucker*, 27 F.4th 560, 563 (7th Cir. 2022); *Thacker*, 4 F.4th at 573. In exercising such discretion, courts must consider individualized arguments and evidence when presented. *Rucker*, 27 F.4th at 563 (citing *United States v. Newton*, 996 F.3d 485, 491 (7th Cir. 2021)). The burden to establish extraordinary and compelling reasons falls on the movant. *Newton*, 996 F.3d at 488. Ultimately, however, "just one good reason for denying a compassionate-release motion suffices." *Rucker*, 27 F.4th at 563 (citing *United States v. Ugbah*, 4 F.4th 595, 598 (7th Cir. 2021) ("a proceeding under another subsection of § 3582 should not be treated like a full resentencing . . . [,] all a district judge need do is provide a sufficient reason for the decision.")).

## I. Administrative Exhaustion

A defendant is permitted to file his own motion for a reduced sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A). Failure to exhaust administrative remedies is an affirmative defense, not a jurisdictional hurdle, so it may be forfeited if not raised. *United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020). The exhaustion requirement of 18 U.S.C. § 3582(c)(1)(A) "is a mandatory claim-processing rule and therefore *must* be enforced when properly invoked." *United States v. Sanford*, 986 F.3d 779, 782 (7th Cir. 2021).

Villar states that "he requested the BOP to move for modification of his prison term and the BOP denied his request." (Mem. at 7, Dkt. 50 at 5). To prove that he made such a request, Villar attached an unauthenticated copy of what he purports to be a request dated March 5, 2024, asking the warden of his facility to bring a motion for a reduced sentence on his behalf. (Mem., Ex. A, Dkt. 50 at 13). Villar did not provide any proof that the request had been denied. Nor did Villar claim to have exercised or exhausted any administrative rights to appeal the denial. Still, Villar filed this motion on April 16, 2024, which is more than 30 days after the date of the purported request.

If the BOP did in fact deny the purported March 5, 2024 request, then there is a question of whether Villar must have completed any administrative appeals process before filing his motion or simply waited thirty days.[2] Assuming for the sake of argument that Villar was not required to complete any administrative appeals process, it appears that the motion is properly before the Court because more than 30 days lapsed between the purported submission of the request and the filing of his motion. Nevertheless, although it is unclear whether Villar has satisfied the exhaustion requirement, the Court need not decide that point because an exhaustion defense has not yet been raised[3] and there are adequate grounds to deny the motion on the merits.

---

[2] *See United States v. Saladino*, 7 F.4th 120, 123-24 (2d Cir. 2021) ("Some district courts have held that the provision authorizes an inmate to file a motion only after he has 'waited 30 days from the Warden's receipt of his request for compassionate release *without receiving a response*.' [Citation omitted.] But if the BOP timely responds to the inmate's request for compassionate release, the inmate must 'satisfy the same exhaustion procedure' that applies to 'routine administrative grievances,' which would 'include[ ] appeals to both the appropriate Regional Director and the BOP General Counsel.'" (quoting *United States v. Samuels*, No. 08 CR 789-6, 2020 WL 7696004, at *3 (S.D.N.Y. Dec. 28, 2020) (emphasis added))).

[3] The Court did not request that the Government file a response to Villar's motion, so there has been no opportunity to invoke (or forfeit) the exhaustion defense.

## II. <u>Extraordinary and Compelling Reasons</u>

A policy statement recently added to the United States Sentencing Commission Guidelines Manual provides that "[t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent" can be an "extraordinary and compelling reason" for reduction of a sentence under 18 U.S.C. § 3582(c)(1)(A). U.S. Sent'g Comm'n Guidelines Manual § 1B1.13(a)(2) (Nov. 2023).[4] Courts considering this new provision have broken it down into two elements: (1) the parent's incapacitation; and (2) the defendant being the only available caregiver. *See, e.g., United States v. Romano*, No. 22 CR 12, 2023 WL 8735203, at *3 (E.D.N.Y. Dec. 19, 2023); *United States v. Nishida*, No. 19 CR 25, 2023 WL 7222875, at *3 (D. Haw. Nov. 2, 2023).

In *Romano*, the defendant sought to reduce his sentence on the basis that he was the only available caregiver for his father, who was scheduled to undergo radiation therapy treatment. 2023 WL 8735203, at *3. The court denied the request because the defendant had not satisfied the burden to show that his father was incapacitated or that the defendant was the only available caregiver. *Id.* Specifically, the defendant had failed to provide "any medical evidence or opinions (or similarly competent evidence)" that would support a finding of incapacitation or allow the court to conclude that the defendant's mother would be an inadequate caregiver, and, in any event, it was "not clear from the record that no other person [could] provide the necessary care." *Id.*

Similarly, in *Nishida*, the defendant sought to reduce his sentence to care for his ailing mother. 2023 WL 7222875, at *1. There, the court also denied the defendant's motion on the basis

---

[4] In addition, while "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement . . . [it] may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." USSG §§ 1B1.13(b)(3)(C) & 1B1.13(d). But the Court need not take Villar's rehabilitative efforts into account because, as explained below, Villar has not met his burden to show that his parents are incapacitated and that he is the only available caregiver, and rehabilitation by itself is not enough.

that the record did not support finding that the defendant's mother was incapacitated or that the defendant was the only available caregiver. *Id.* at *2-3. Although the defendant had provided evidence that his mother suffered from various medical conditions, he did not explain how they were incapacitating, and the court could not make reasonable deductions in that regard. *Id.* at *2. With respect to being the only available caregiver, the defendant claimed that his father had passed away, his brother was deployed in the military, and his other siblings were unavailable due to family and work responsibilities. Those circumstances did not suffice, however, because the "record [did] not sufficiently show that no one other than [the defendant could or would have] provided care to his mother." *Id.* at *3. By way of example, the court noted that "there is no explanation as to whether household members, friends in the community, or relatives other than his siblings and father would have the time, money, and resources to help with his mother's care." *Id.*

Here too, the Court finds that Villar has failed to satisfy his burden to show that his parents are incapacitated and that he is the only available caregiver. To prove incapacitation, Villar submitted copies of letters from his parents' primary care physicians. Although Villar claims that his father essentially requires around-the-clock care and assistance with basic tasks such as eating and bathing, the letter from his father's doctor lists his diagnoses and merely states that he "could benefit from receiving assistance at home with day to day [sic] tasks as well as assistance with transportation" and that his chronic low back pain "affects his mobility and functional status." (Mem., Ex. B). The doctor does not opine as to any cognitive limitations, say that Villar's father *requires* or *needs* around-the-clock care, or declare that he is incapacitated or use equivalent language. Likewise, the letter from Villar's mother's doctor simply lists the conditions she suffers from but does not include any statement about her physical or mental capacities and is therefore

even less supportive of a finding of incapacitation. Accordingly, the record does not support finding that either of Villar's parents are incapacitated.

The insufficient proof of Villar's mother's condition also cuts against his claim that he is the only available caregiver. Without proof that Villar's mother is incapacitated, the Court cannot conclude that she cannot be a caregiver for her husband. But even if she were unavailable, Villar has not met his burden to show that he is the only other option. Villar admits that all of his siblings live within 45 minutes to an hour of their parents, but claims they are unavailable to care for his parents because they have large families and young children. Furthermore, he states that one of his siblings is currently the primary caregiver for his parents, but that she is unable to "adequately" care for them. As an initial matter, Villar does not explain how the care his sister provides for their parents is inadequate or in what way his parents are not being cared for. Beyond that, the siblings' proximity to their parents is simply not "remote," and having other general family obligations is not enough to show that they are truly unavailable to care for their parents. And in any event, Villar has not explained "whether . . . friends in the community, or relatives other than his siblings . . . would have the time, money, and resources to help with his [parents'] care." *Nishida, 2023 WL 7222875*, at *3. Finally, Villar did not include any information about his parents' financial resources or eligibility for public benefits to pay for any healthcare needs at home or in a residential facility. If Villar's family is willing and able to financially support him as a caregiver for his parents, then presumably they would be able to do the same for someone else. The burden is on Villar to show that he is the "only available caregiver," and the record does not support such a conclusion.

In sum, Villar has not shown that his parents are incapacitated and that he is the only available caregiver, so there are presently no "extraordinary and compelling reasons" that warrant

a sentence reduction. Even if Villar had satisfied this burden, however, a sentence reduction would not be warranted based on the Court's consideration of the sentencing factors.

**III. Sentencing Factors**

In determining whether extraordinary and compelling reasons warrant a sentence reduction, the Court must also consider the factors set forth in section 18 U.S.C. § 3553(a) to the extent that they are applicable. *See* 18 U.S.C. § 3582(c). These factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed . . .
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established [under the Sentencing Guidelines];
> (5) any pertinent policy statement [in the Sentencing Guidelines];
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). Consideration of these factors in Villar's case weighs heavily against reduction of his sentence.

The previously assigned district judge[5] sentenced Villar to a 77-month term of imprisonment for heroin distribution, a 12-month term of imprisonment for commission of that offense while on release for another, and 5 years of supervised release. At the time Villar

[5] This case was reassigned from Judge Kocoras to Judge Hunt on April 18, 2024. (Order, Dkt. 51).

committed the instant heroin distribution offense, he had been on the run for years after having failed to self-surrender for the 2009 cocaine offense, as reflected by the 12-month enhancement. Villar's conviction in this case is one in a series of escalating drug offenses dating back to 1994 when he was caught with over 500 pounds of marijuana. Only 5 years ago, Villar escaped custody for about a month before he was captured. Considering these circumstances and others included in the PSR, the Court is convinced that the original sentence imposed in this case was and still is "sufficient, but not greater than necessary, to comply with the purposes set forth in [18 U.S.C. § 3553(a)(2)]" such that no reduction is presently warranted. *See* 18 U.S.C. § 3553(a).

The offense in this case was serious—it involved distribution of a highly addictive, dangerous, and in many cases deadly drug. Villar's criminal history is replete with offenses indicative of a career in the drug-trafficking industry and complete disrespect for the law, including attempts to abscond any sentence imposed on him. *See, e.g., United States v. Clown*, 2024 WL 1574045, at *4 (D.S.D. Apr. 11, 2024) (failure to appear weighed against sentence reduction); *United States v. Wirichaga-Landavazo*, 2023 WL 2391017, at *2 (D. Utah Mar. 7, 2023) (convictions for contempt and failure to appear demonstrated lack of respect for the law, so sentence was necessary to promote respect for the law). Completion of Villar's sentence is needed to deter and protect the public from more of the same criminal conduct, as there is no reason to believe that he would not return to his prior life of crime.[6]

Although Villar's reported strides towards rehabilitation (taking college courses, working in prison, and reconnecting with family) are all noteworthy, Villar's recent rehabilitative efforts are relatively limited when compared to the preceding decades of serious drug-related crimes. The

[6] For these reasons, the Court also cannot conclude that Villar is "not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)[.]" USSG § 1B1.13(a)(2).

Court hopes that Villar stays true to his plan to start a legitimate business in the construction industry upon his release but remains concerned that a reduction of his sentence right now would cut short the rehabilitative purposes of 18 U.S.C. § 3553(a)(2)(D).

In sum, reducing sentence to time served and releasing him from prison today simply would not reflect the seriousness of his crimes, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes, or provide Villar with the needed rehabilitative resources. Although only one reason for denying Villar's motion is sufficient, *see Rucker*, 27 F.4th at 563; *Ugbah*, 4 F.4th at 598, these are all good reasons why a reduction of Villar's sentence is not warranted.

## CONCLUSION

For the reasons stated above, Villar's motion for compassionate release [49] is denied.

**DATED**: June 11, 2024

**ENTERED**:

LaShonda A. Hunt

LASHONDA A. HUNT
United States District Judge